UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KIMBERLY J. LOGAN,

     Plaintiff,

vs.                          Case No. 8:04-cv-1185-T-MSS

JO ANNE B. BARNHART,
Commissioner of Social Security,

     Defendant.

_____/

## **ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42, United States Code, Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying claims for disability, disability insurance benefits, and supplemental security income under the Act.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

I.     Background

A.     Procedural History

Plaintiff filed applications for disability, disability insurance benefits and supplemental security income on April 18, 2002.  (T. 288-289.)  Plaintiff alleged an onset of disability on August 1, 2001, due to chronic renal disease, stomach problems, depression and bilateral kidney reflux.  (T. 78.)  Her applications were denied initially and upon reconsideration.  Plaintiff requested a hearing, which was held on September 9, 2003, before Administrative Law Judge Ann S. Azdell (hereinafter referred to as the "ALJ").  (T. 302-321.)  In a decision dated December 11, 2003, the ALJ denied Plaintiff's claims for benefits.  (T. 16-24.)  The Appeals Council denied review of the decision on April 5, 2004.  (T. 4-6.)  This action for judicial review ensued.

B.     Medical History and Findings Summary

Plaintiff's medical history is set forth in the ALJ's decision.  By way of summary, Plaintiff complained of frequent urinary tract infections, pelvic pain, dermatitis of the hands, gastroesophageal reflex, chronic pyelonephritis, renal insufficiency, lupus, depression, memory problems, pain and numbness in her arms, and fainting episodes.

At the hearing, the Plaintiff presented the ALJ with medical records from Plaintiff's treating and examining physicians.  After considering the evidence, the ALJ found that although Plaintiff suffered from severe impairments including a major

2

depressive disorder, recurrent, a history of substance abuse, anxiety, lupus, fibromyalgia and a history of renal cysts, she did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (T. 19, 23.)

The ALJ found the Plaintiff's allegations of incapacitating pain and disabling impairments were not fully credible.  (T. 20-21, 23.)  The ALJ determined Plaintiff had the residual functional capacity to lift, carry, push or pull 20 pounds occasionally and up to ten pounds frequently, and sit, stand and walk a total of six hours during an eight-hour workday.  Plaintiff was unable to perform detailed or complex tasks and was capable of only occasional interaction with the public.  (T. 22, 23.)  After eliciting the testimony of a vocational expert, the ALJ determined that Plaintiff's residual functional capacity, as limited, did not prevent Plaintiff from performing her past relevant work as a waitress or hospital cleaner.  The ALJ therefore concluded Plaintiff was not disabled under the Act.  (T. 22-23.)

Plaintiff contends that the decision of the ALJ must be reversed and remanded for further hearing due to the following reasons: (1) the ALJ erred in failing to give proper weight to the opinion of Plaintiff's treating physician; (2) the ALJ failed to develop the record fully; and (3) the ALJ erred in finding Plaintiff could perform her past relevant work.

For the reasons that follow, the Undersigned AFFIRMS the decision of the Commissioner.

II.     Standard of Review

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole. 42 U.S.C. §405(g).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  If there is substantial evidence to support the Commissioner's findings, this Court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

No similar presumption of validity attaches to the Commissioner's legal conclusions; rather the Court reviews the application of law de novo.  See Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993).  If an error of law was committed by the Commissioner, the case must be remanded to the Commissioner for application of the correct legal standard.  McDaniel v. Bowen, 800 F.2d 1026, 1029-30 (11th Cir. 1986); Smith v. Heckler, 707 F.2d 1284, 1285 (11th Cir. 1983).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required.  Jamison v. Bowen, 814 F.2d 585 (11th Cir. 1987).

III.    Discussion

   A.    WHETHER THE ALJ ERRED IN FAILING TO GIVE GREAT
         WEIGHT TO THE OPINION OF PLAINTIFF'S TREATING
         PHYSICIAN, DR. KADRI.

   Plaintiff first contends that the ALJ erred in failing to give great weight to the

opinion of Plaintiff's primary care physician, Dr. Kadri.

   The controlling body of law on the priority of medical evidence provides that

the treating physician's opinion may not be rejected absent good cause to the

contrary.  Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991).  Furthermore,

that good cause finding must be set forth expressly on the face of the ALJ's opinion.

"Absent a showing of good cause to the contrary, the opinions of treating physicians

must be accorded substantial or considerable weight by the Commissioner."  Lamb

v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988)(citation omitted); MacGregor v.

Bowen, 786 F.2d 1050, 1053 (11th Cir.1986).   The reports of reviewing, non-

examining physicians do not constitute substantial evidence on which to base an

administrative decision.  Spencer on Behalf of Spencer v. Heckler, 765 F.2d 1090,

1093 (11th Cir.1985); Strickland v. Harris, 615 F.2d 1103 (5th Cir.1980); Lamb, 847

F.2d at 703 ("The opinions of non-examining, reviewing physicians, ... when contrary

to those of examining physicians are entitled to little weight in a disability case, and

standing alone do not constitute substantial evidence.")  Further, the good cause

required before the treating physicians' opinions may be accorded little weight is not

provided by the report of a non-examining physician where it contradicts the report

of the treating physician.  Johns v. Bowen, 821 F.2d 551 (11th Cir.1987).  This priority, known as the "treating physician rule," is borne out of the notion that treating physicians generally have more knowledge of the medical history of their patients and in that capacity are best qualified to assess the nature of the claimed disability.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

Dr. Kadri, Plaintiff's primary care physician, first saw Plaintiff on May 2, 2001, at which time he diagnosed chronic renal disease, chronic pelvic pain, and chronic left tubal tenderness and inflammation.  (T. 266.) Plaintiff returned on November 13, 2001, complaining of upper respiratory symptoms, bilateral lower back pain and a rash on her hand.  Dr. Kadri diagnosed contact dermatitis.  He felt that Plaintiff's renal cyst needed to be reevaluated.  (T. 260.)  An echogram reflected chronic pyelonephritis.  (T. 258.)

On February 19, 2002, Plaintiff complained of abdominal distention and bloating.  Dr. Kadri diagnosed non-specific abdominal pain, rule out ovarian cyst, renal cyst and dyspareunia.  (T. 257.)  On June 13, 2002, Plaintiff returned complaining of fever, chills, body aches fatigue, tiredness, dizziness and bilateral kidney pains and aches.  Dr. Kadri diagnosed pyelonephritis and controlled anxiety.  (T. 256.)

Plaintiff returned on June 18, 2002 complaining of arthralgia and phlebitis of her arms.  Plaintiff complained of swelling, numbness and pain.  Dr. Kadri felt the arthralgia was probably a side effect from medication.  Plaintiff's phlebitis was

resolving and her anxiety/depression were controlled.  Dr. Kadri recommended light duty.  (T. 255.)

On August 23, 2002, Plaintiff complained of arthritis and lactorhea.  She indicated she was seeing a gynecologist and there was suspicion of a small tumor on the brain.  Dr. Kadri indicated arthralgia, lactorhea and anxiety/depression.  He recommended laboratory testing.  (T. 254.)  Upon testing in November 2002, a Lupus anticoagulant was detected.  (T. 253.)

On December 4, 2002, Dr. Kadri wrote a letter at Plaintiff's request stating that Plaintiff's blood tests detected Lupus and that she was unable to work at that time. (T. 248.)  On January 15, 2003, Plaintiff complained of ongoing fatigue.  Dr. Kadri's notes indicate "rule out drug addiction."  He advised her to continue with her medications and treatment, follow a low cholesterol diet and increase her exercise. (T. 246.)

The ALJ acknowledged Dr. Kadri's opinion that Plaintiff's tests had detected Lupus and that she could not work at that time.  The ALJ, however, did not give great weight to the opinion.  The ALJ first noted that the finding of disability is an issue reserved to the Commissioner.  (T. 21, citing SSR 96-5P.)  The ALJ further noted that Dr. Kadri's conclusion is "inconsistent with other substantial medical evidence as well as the claimant's activities of daily living."  Finally, the ALJ indicated that on December 10, 2002, Plaintiff told Dr. Zaidi that she was having less pain, less fatigue, and less stiffness.  (T. 21.)  The ALJ concluded that he did "not give

credence to Dr. Kadri's opinion, which was written at the claimant's request." (Id.)

Upon a review of the record, the Court finds that the ALJ had good cause to reject Dr. Kadri's opinion.   First, the Commissioner correctly points out the responsibility of determining whether a claimant is disabled lies with the Commissioner.  See 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(1) (the Commissioner is responsible "for making the determination or decision about whether [the claimant] meet[s] the statutory definition of disability. . . ."); SSR 96-5P.  Furthermore, "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."  Id.

Second, the ALJ may reject any physician's opinion when the evidence supports a contrary finding.  Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir.1987). Additionally, good cause exists to reject a treating physician's opinion when the physician's opinion is inconsistent with his own treatment records or when the physician's statement "contains no clinical data or information to support his opinion."  Lewis, 125 F.3d at 1440; Edwards, 937 F.2d at 583.

In this case, substantial evidence supports the ALJ's conclusion that Dr. Kadri's opinion with regard to Plaintiff's inability to work is wholly conclusory, inconsistent with his treatment records and is not supported by the medical evidence of record.  For instance, when Dr. Kadri first saw Plaintiff in May 2001, he simply told her to continue fluid intake and stay hydrated.  (T. 266.)  On June 13, 2002, Dr. Kadri opined that Plaintiff had pylenoephritis and that he expected her to heal.  (T. 256.)

Plaintiff did not begin complaining of joint pain until June 18, 2002, nearly a year after her alleged date of disability, at which time Dr. Kadri opined that the arthralgia was probably a side effect of Plaintiff's medication. (T. 255.) Dr. Kadri felt no need to add any medications. He advised Plaintiff to increase her fluids and to rest. Notably, at that time he indicated "light duty." (T. 255.) On August 23, 2002, Dr. Kadri advised Plaintiff to continue with the same treatment plan and take Ibuprofen as necessary. (T. 254.)

Significantly, there is no indication in the record that Dr. Kadri saw Plaintiff between August and December 2002. On November 13, 2002, Plaintiff underwent laboratory testing. (T. 250-53.) It was only after the blood work up was positive for Lupus anticoagulant that Dr. Kadri opined Plaintiff could not work. (T. 248, 253.) Further, the recommendation that Plaintiff not work did not include durational parameters. Certainly he offered no opinion that Plaintiff was likely going to be unable to work or had been unable to work for a period of twelve months or more. In fact, Dr. Kadri saw Plaintiff only one time thereafter, on January 15, 2003. At that time, Dr. Kadri advised Plaintiff to continue with her medications, follow a low cholesterol diet and increase her exercise. (T. 246.) He rendered no opinion regarding Plaintiff's ongoing inability to work. Given the foregoing, Dr. Kadri's opinion is at best conclusory and to the extent it was anything more than a temporary recommendation, it is not supported by his medical records.

Furthermore, other substantial medical evidence of record supports the ALJ's

rejection of Dr. Kadri's opinion that Plaintiff could not work.  Dr. Zaidi, evaluated Plaintiff on November 19, 2002, at Dr. Kadri's request.  At that time, Plaintiff complained of small and large joint arthralgias that had gotten worse in the last few months.  Dr. Zaidi found no evidence of active synovitis.  Dr. Zaidi indicated that Plaintiff's serologies were negative, but that she had a moderate elevated sedimentation rate of 30 mm/hr.  Dr. Zaidi opined that Plaintiff had some evidence of fibromyalgia but "given small joint swelling, an elevated sedimentation rate as well as a family history of lupus, a coexisting inflammatory process which is still involving needs to be kept in mind."  (T. 272.)  Dr. Zaidi stated that he had given Plaintiff a trial of parenteral steroids which should be of significant help if she was experiencing an evolving inflammatory process.  (T. 272.)

Interestingly, on December 12, 2002, just one week after Dr. Kadri wrote that Plaintiff was unable to work, Plaintiff reported to Dr. Zaidi that her pain and morning stiffness were mild.  She indicated that she had less fatigue and stiffness and that the injections helped a lot.  Dr. Zaidi diagnosed UCTD (undifferentiated connective tissue disease) and steroid-responsive arthralgias.  He recommended Plaintiff take a low dose of baby aspirin and call for cortisone injections when she had a flare up.  (T. 275.)

Dr. Zaidi's records indicate that on January 30, 2003, Plaintiff complained of moderate, intermittent pain.  Dr. Zaidi gave her an injection.  (T. 271.)  On March 11, 2003, Plaintiff reported that the steroid injection helped.  (T. 267.)  On May 13, 2003,

Plaintiff again reported that the injection helped.  Dr. Zaidi indicated that Plaintiff was not on immunosuppressive medication.  (T. 269.)

At no time did Dr. Zaidi place any restrictions on Plaintiff or advise that she was unable to work.  In fact, on December 10, 2002, Plaintiff reported to Dr. Rodriguez that her specialist (presumably, Dr. Zaidi) felt that she had a "mild case" of Lupus.  (T. 233.)  Additionally, Plaintiff repeatedly reported that the injections helped relieve her symptoms.  Furthermore, at the administrative hearing, Plaintiff testified that her physicians were just monitoring her and that they "really haven't said too much."  (T. 310.)

Not only does substantial medical evidence of record support the ALJ's rejection of Dr. Kadri's opinion that Plaintiff was incapable of working, Plaintiff's daily activities also support the ALJ's decision not to credit this opinion.  In this regard, the ALJ pointed out that in December 2001, Dr. Rodriguez noted that Plaintiff said she was working as a dancer so she could pay her bills but that her boyfriend was having difficulty caring for her children when she was working.[1]  (T. 19, 240.)  The ALJ also noted that Plaintiff reported that when her mother became ill, she moved in with Plaintiff, Plaintiff's boyfriend, and Plaintiff's two children and Plaintiff "admitted to having a heavy load to carry."  (T. 19, 239, 240.)  The ALJ further noted that Plaintiff testified that she cared for her two young children, went to the doctor weekly and to

---

[1]  In her disability report, Plaintiff indicated that she was not working and that she stopped working in August 2001.  (T. 78.)

11

the movies, and socialized with friends.  (T. 20, 309.)

Also, the record shows that Plaintiff reported that she attended church and cleaned her home.  (T. 101-102.)  Notably, on December 10, 2002, just six days after Dr. Kadri opined that Plaintiff could not work, Plaintiff advised Dr. Rodriguez that she was planning on finding a job.  (T. 233.)  For these reasons, the Court finds that the ALJ had good cause to reject Dr. Kadri's opinion and his doing so was supported by substantial evidence.

B.    WHETHER THE ALJ FAILED TO FULLY DEVELOP THE RECORD.

Plaintiff next contends that the ALJ failed to develop the record.  With regard to this issue, Plaintiff argues that the ALJ erred in relying on the opinions of the non-examining state agency physicians and that he should have ordered a consultative examination to assess her residual functional capacity in light of her impairments.

It is the claimant's burden to provide medical evidence showing that she is disabled.   20 C.F.R. § 416.912(c).   Nonetheless, the ALJ has the burden of developing a full and fair record.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997) (citing Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).   The regulations provide that the ALJ may order a consultative examination.  20 C.F.R. §§ 416.912(f) and 416.917 (emphasis added).  A consultative examination is not always required in order for the ALJ to satisfy her duty to fully and fairly develop the record; however, it may be required in order for the ALJ to render an informed decision if the record establishes that such an examination is necessary.  Reeves

12

v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984)(citation omitted); Pearson v. Bowen, 866 F.2d 809 (5th Cir. 1989).

It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for her to make an informed decision. Holladay v. Bowen, 848 F.2d 1206, 1209 (11th Cir. 1988). Prior to an ALJ's ordering a consultative examination, the claimant must first raise the "requisite suspicion" that such an examination is necessary for the ALJ to satisfy her duty of full inquiry. Haywood v. Sullivan, 888 F.2d 1463, 1472 (5th Cir. 1989).

In this case, the ALJ apparently concluded that a consultative examination was not necessary. The Court finds that substantial evidence supports the ALJ's decision that a consultative examination was not necessary in order for the ALJ to make an informed decision regarding Plaintiff's physical limitations and resulting physical residual functional capacity.

In determining Plaintiff's residual functional capacity, the ALJ noted that he considered all of the evidence including Plaintiff's description of her symptoms and limitations and the opinions of medical sources. (T. 19-20.) The ALJ gave great weight to the opinions of the non-examining state agency physicians in determining the Plaintiff's residual functional capacity. (T. 21-22.) The ALJ explained that these opinions were "not inconsistent with the other substantial evidence."

Two state agency physicians reviewed the medical evidence and determined Plaintiff had the physical residual functional capacity to perform light work. (T-153-

160; 203-210.)  While these assessments predated the finding of a positive Lupus anticoagulant, nothing in the medical records that postdate the laboratory test suggests that Plaintiff's physical functional capacity was more limited.  Significantly, Dr. Zaidi, who treated Plaintiff for this condition, did not place any functional limitations on Plaintiff.  As such, Plaintiff failed to raise the requisite suspicion that a consultative examination was necessary for the ALJ to make an informed decision as to Plaintiff's residual functional capacity.

>   C.   THE ALJ ERRED IN HER FINDING THAT PLAINTIFF COULD PERFORM HER PAST RELEVANT WORK.

Plaintiff's final contention is that the ALJ erred in finding that Plaintiff could perform her past relevant work as a hospital cleaner.  In this regard, Plaintiff contends that the ALJ asked a vocational expert an incomplete hypothetical. Specifically, Plaintiff contends that the ALJ failed to consider Plaintiff's limitations in fine manipulations and limitations due to anxiety.

Hypothetical questions posed to a vocational expert must set forth all the limitations of the claimant.  Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985); accord Bearden v. Shalala, Case No. 93-514, 1993 WL 664623, at *4 (N.D. Ala. Dec. 14, 1993).  At the hearing, based on the vocational exhibits and Plaintiff's testimony, the VE characterized Plaintiff's past work as follows: (1) cleaner/hospital, which Plaintiff performed at the light strength level; (2) waitress/informal, which is classified as light work; and (3) carpet layer helper, which is classified as heavy

work.  (T. 315-17.)  The ALJ then stated as follows:

> Dr. Simen, Ms. Baird and I will ask you hypothetical questions, and I want you to assume for each that we have an individual who is 27 to 30 years of age with a high school equivalency education and this past work experience of these three jobs we've just outlined.  The first hypothetical is based on the assessment of the state agency psychologists and physicians at Exhibits 4, 6, 10 and 11F.  And that is for limited light work.  Lift, carry, push and pull 20 pounds on occasion, 10 pounds frequently.  Sit for six hours, stand and walk for six, in an eight-hour day.  Work is limited to unskilled work; that is, no detailed or complex tasks.  And secondary to problems with social interaction, the individual is limited to only occasional – that is up to one-third of the day – interaction with the public.  Given that residual functional capacity, could any of the past jobs be performed?

(T. 318.)  The VE answered that such an individual could work as a hospital cleaner, as Plaintiff had previously performed the job.  (Id.)

The ALJ then posed the following hypothetical:

> I want you to assume that lifting, carrying, pushing and pulling is limited to ten pounds on occasion, five pounds frequently.  Sitting can be accomplished for six hours, standing and walking for two, in an eight-hour day.  The individual can never climb a ladder, can occasionally climb stairs, balance, stoop, crouch, kneel and crawl.  Again, no detailed or complex tasks and only occasional interaction with the public.  Now I assume that that would preclude all past relevant work?

The VE responded, "Yes."  (T. 318-19.)  The ALJ then asked the VE to list all unskilled jobs within that residual functional capacity that would permit only 1/3 interaction with the public.  The VE responded surveillance system monitor and assembler, including final assembler and lens inserter.  (T. 319.)

The ALJ then asked the VE to add to the hypothetical the limitation of fine

manipulation for no more than one-third of the workday.  The VE testified that such a limitation would eliminate the assembler jobs.  (Id.)  Finally, the VE testified that if the Plaintiff were unable to reliably sustain an 8-hour day or a 40-hour week due to depression and panic attacks, all employment would be precluded.  (T. 320.)  Plaintiff's representative did not ask any questions of the VE.

Plaintiff argues that the ALJ failed to include in the first hypothetical fine manipulation as a limitation.  Plaintiff argues that her difficulty with her hands would prevent her from performing as a hospital cleaner. The Commissioner responds that the ALJ did not err in failing to include the limitation in the first hypothetical because substantial evidence in the record contradicts Plaintiff's claim that she was limited in fine manipulation.

A review of the records shows that the ALJ did not err in failing to include fine manipulation in his initial hypothetical to the VE nor did he err in including only occasional fine manipulation in a later hypothetical.  While Plaintiff complained of difficulty using her hands, as well as other functional difficulties, the ALJ found Plaintiff's subjective complaints as a whole not to be fully credible.  In considering Plaintiff's complaints of pain and other subjective symptoms, the ALJ applied the correct legal standard and articulated a basis for finding Plaintiff's complaints not fully credible.  These finding are supported by substantial evidence.

First, the ALJ explained that, while the medical evidence established the presence of severe impairments that could be expected to produce some of the

symptoms alleged, the intensity of the symptoms alleged by Plaintiff were inconsistent with the evidence of record.  (T. 21.)  The ALJ then explained as follows:

> The undersigned found the claimant's testimony to be very vague and non-responsive, especially about recent work activity.  Progress notes from Dr. Rodriguez on December 5, 2001 reveal that the claimant said she was working as a dancer again so she could catch up on he bills (Exhibit 13F page 11).  Even though the claimant testified that she did not use alcohol or drugs for the past two to three years, she admitted to Dr. Rodriguez that she entered a Methadone Treatment Program at PAR just last year (Exhibit 13F page 5).  She sad she was addicted to opiates for about three years and had gotten to the point where she was buying them off the street.
>
> Regarding claimant's "passing out," these incidents were due to combinations of Prozac and Methadone therapy (Exhibit 13F page 5).  She began weaning down on Methadone and admitted to being more awake since taking Prozac (Exhibit 18F page 2).

(T. 21.)

The reasons stated by the ALJ are supported by the record.  See Allen v. Sullivan, 880 F.2d 1200, 1203 (11th Cir. 1989) (ALJ's rejection of plaintiff's subjective pain complaints not error because ALJ cited at least three reasons for rejecting plaintiff's testimony.)

Second, while the medical evidence indicates that Plaintiff was diagnosed with skin lesion and dermatitis of the hands (T. 130, 135, 136, 260.), there is no medical evidence supporting the resulting functional limitations alleged by Plaintiff.  In this regard, Dr. Kadri repeatedly indicated that examinations revealed no focal deficits, sensation intact, and PAR 5/5.  (T. 254, 55, 56, 266.)  On Plaintiff's last visit to Dr.

17

Kadri in January 2003, Dr. Kadri noted "strength 5/5." (T. 246.) Dr. Zaidi repeatedly performed musculoskeletal examinations of Plaintiff's hands and noted that they were "OK." (T. 267, 271.) While Dr. Zaidi indicated that Plaintiff initially had a rash on her hands and some reddening of the hands (T. 273-75.), records related to later visits do not reference such problems but rather refer to nail fungus, sores on her arms, and face lesions. (T. 267, 270, 271.) Additionally, the state agency physicians did not find any fingering or fine manipulation limitations. Finally, Plaintiff even testified that she had no problems buttoning, zipping or dressing. (T. 311.) As such, Plaintiff's claim that the ALJ should have included a fine manipulation limitation in the hypothetical to the VE is rejected.

Finally, Plaintiff argues that, in light of her inability reliably to sustain an 8-hour day or 40-hour workweek due to depression and anxiety attacks, the ALJ erred in finding that she could perform her past relevant work. In support of this contention, Plaintiff points to her own complaints and testimony relating to anxiety attacks as well as to a report purportedly submitted by Dr. Reif. (T. 179-181.)

Plaintiff testified that, due to her depression and anxiety, she could not leave the house. (T. 312-13.) She testified that she gets confused multiple times a week. (T. 313-14.) The ALJ acknowledged this testimony (T. 20), but, as previously indicated, he did not find Plaintiff's testimony to be fully credible.

The Treating Psychiatrist/Psychologist Mental Health Report to which Plaintiff refers is dated August 1, 2002. (T. 179-81.) It is unclear who completed the report

18

as the request was sent to Dr. Alma Reif, but there are no corresponding medical records from Dr. Reif in the record indicating that Dr. Reif ever examined Plaintiff. Furthermore, the signature is illegible.

In any event, both the report and other substantial medical evidence of record support the ALJ's findings that Plaintiff was unable to perform detailed or complex tasks and was capable of only occasional interaction with the public. First, whomever completed the report did not indicate that Plaintiff could not sustain an 8-hour work day or a 40-hour work week. The report indicates Plaintiff suffered from a mental impairment that interferes with daily functioning and that she was prescribed medication for the condition. (T. 179.) The report indicated that Plaintiff mood was depressed, tense, irritable and her affect worried and constricted and that at times Plaintiff felt like her life was out of control. Plaintiff had difficulty concentrating. Nonetheless, Plaintiff's thought processes were within normal limits and her memory intact. Plaintiff was oriented to person, place, time and situation and was competent to manage her own funds. The report indicated that Plaintiff was "coherent, able to comprehend but due to longstanding depression and anxiety has difficulty concentrating and retaining information." (T. 179-181.)

Second, consistent with that report, in October 2002, a state agency medical consultant found that Plaintiff's restrictions of daily activities were mildly limited and she had moderate limitations in maintaining social functioning and concentration, persistence and pace. (T. 199.) He explained that Plaintiff was moderately limited

19

in her abilities to: (1) maintain attention and concentration for extended periods; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) accept instructions and respond appropriately to criticism from supervisors, and (4) complete a normal workday and workweek without interruptions and perform at a consistent pace.  (T. 185-86.)  The consultant opined that Plaintiff was capable of doing simple tasks and being cooperative.  (T. 187.)

Third, Dr. Rodriguez, who treated Plaintiff for her depression since March 2001, consistently indicated that she was doing well on Effexor and that it helped her condition.  (T. 238, 239, 242.)  In October 2002, Plaintiff reported feeling much calmer since she started a Methadone program.  (T. 234.)  In December 2002, when Plaintiff reported that she was not sure that Effexor was effective anymore, Dr. Rodriguez prescribed Prozac.  (T. 233.)  Thereafter, Plaintiff reported feeling much better.  (T. 230.)  At all times during his treatment of Plaintiff, Dr. Rodriguez found her to be alert and oriented and her speech relevant, coherent and goal directed.  (T. 230, 232-42.) At no time did he opine that Plaintiff could not work; rather, Plaintiff repeatedly reported that she was either working or planning to find a job.  (T. 233, 240, 241, 242.)

The foregoing substantial evidence supports the ALJ's findings with respect to Plaintiff's mental limitations.  The ALJ incorporated these limited findings into the hypothetical posed to the VE.  The VE testified that, despite those mental limitations,

20

Plaintiff could perform her past relevant work as a hospital cleaner.  (T. 318.)  As such, the ALJ did not err in finding Plaintiff could perform her past relevant work as a hospital cleaner.

## CONCLUSION

The ALJ's rejection of Dr. Kadri's opinion as to Plaintiff's ability to work is supported by substantial evidence.  Furthermore, the ALJ did not err in his decision not to order a consultative examination.  Finally, the ALJ did not err in finding that Plaintiff could perform her past relevant work.  The Undersigned therefore AFFIRMS the decision of the Commissioner.  The Court ENTERS judgment in favor of the Defendant and DIRECTS the Clerk to enter judgment pursuant to Rule 58.

MARY S. SCRIVEN
United States Magistrate Judge

DATED: September 23, 2005